UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
Lafayette Division

| | |
|---|---|
| EDWARD C. ABELL, et al., </br>   Plaintiffs, </br></br> v. </br></br></br> U.S. ARMY CORPS OF ENGINEERS, et al., </br>   Defendants. | ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) 6:22-cv-01353 </br> ) (JDC/CBW) </br> ) </br> ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO TRANSFER TO THE DISTRICT OF ALASKA**

**INTRODUCTION**

This action focuses exclusively on a permit Plaintiffs sought from the Army Corps of Engineers ("Corps") at their field office in Fairbanks, Alaska, for rights to dredge the Bonanza Channel near Nome, Alaska, to mine for gold. Because this action involves a matter of intense local interest in Alaska—and of very little (if any) public interest in the Western District of Louisiana—and because all other public and private interest factors considered under 28 U.S.C. § 1404(a) favor Alaska over Louisiana, Defendants respectfully request that this matter be transferred to the District of Alaska.

**FACTUAL BACKGROUND[1]**

Plaintiff IPOP, LLP, is a Nevada-based corporation that was hired by fellow Plaintiff

---

[1] For purposes of this motion only, Defendants assume the veracity of the allegations in Plaintiffs' complaint. When deciding issues of venue, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237 (5th Cir. 2009); *see also Hammers v. Mayea-Chang*, 2019 WL 6728446, at *4 (E.D. Tex. Dec. 11, 2019) (collecting cases showing courts may consider evidence outside the pleadings under 28 U.S.C. § 1404(a)).

1

Rivers of Gold, Alaska Mining, Global TV Show, Global Merchandising LP ("Rivers of Gold"), a California-based partnership that has "many investors," including two Louisiana residents, fellow Plaintiffs Edward and Elaine Abell. Compl. ¶¶ 3-7, 209. Plaintiffs allege IPOP has sought a permit from the Corps to dredge the Bonanza Channel just outside of Nome, Alaska, as part of an extensive gold mining operation. *Id*. ¶ 7, 14-17. Plaintiffs allege that their permitting application has been delayed by extensive environmental and cultural study requirements of the Alaska field offices of multiple federal agencies and various Alaska state agencies, and by the engagement of the local community in Alaska, including various tribal communities and governments. *See e.g.*, Compl. ¶¶ 1, 14-17, 36-209.

Specifically, Plaintiffs allege that from March 2018 through the present, IPOP interacted with personnel from, submitted documents to, and received documents from the Alaska field offices of the Corps, the National Marine Fisheries Service ("NMFS"), and the U.S. Fish and Wildlife Service ("USFWS"), as part of processing their permit application. *See, e.g., id.* ¶¶ 16, 28, 103, 118, 171, 206. Similarly, Plaintiffs allege that, over that same timeframe, IPOP and the Corps have met with personnel from and exchanged documents related to their permitting application with Alaska state agencies including the Alaska Department of Natural Resources, the Alaska Department of Environmental Conservation, and the Alaska Department of Fish and Game. *See, e.g., id.* ¶¶ 16, 171, 180, 206. And, Plaintiffs allege that during this same timeframe, the local community in Alaska, including multiple native communities, has been involved in the permitting process. *See id.* ¶¶ 47, 54, 74-75, 94-95, 98, 101, 118, 98, 124, 131, 138, 149, 152. Indeed, the local community in Alaska has been following Plaintiffs' permitting application—and this nascent litigation—intensely. *See e.g.*, *Twice Extended Public Comment Period Garners Overwhelming Opposition to IPOP's Proposed Mining Project*, KNOM RADIO, Oct. 2, 2020,

*available at* https://www.knom.org/wp/blog/2020/10/02/twice-extended-public-comment-period-garners-overwhelming-opposition-to-ipops-proposed-mining-project/; *IPOP Sues U.S. Army Corps of Engineers for Permit Issuance*, THE NOME NUGGET, Jul. 14, 2022, *available at* http://www.nomenugget.com/news/ipop-sues-us-army-corps-engineers-permit-issuance.[2]

Plaintiffs have not alleged that any relevant documents exist in Louisiana, that any relevant meetings took place in Louisiana, or even that any Louisiana-based individuals were involved in any aspect of the Alaska-based permitting application at issue in this litigation. *See generally*, *id*. Aside from merely alleging that the California-based partnership that hired IPOP had two Louisiana residents among its "many investors," Plaintiffs' complaint is devoid of any references to Louisiana whatsoever. *See id.* ¶¶ 3, 4, 209.

## STANDARD OF REVIEW

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought . . . ." 28

---

[2] *See also, e.g.*, *Outside Interest Seeks Permits to Mine Gold in Bonanza Channel*, THE NOME NUGGET, May 4, 2018, *available at* http://www.nomenugget.com/news/outside-interest-seeks-permits-mine-gold-bonanza-channel; *Rivers of Gold:  No Permits Issued Yet*, THE NOME NUGGET, Jun. 8, 2018, *available at* http://nomenugget.com/news/rivers-gold-no-permits-issued-yet; *IPOP Won't Be Mining This Season*, THE NOME NUGGET, Jul. 3, 2020, *available at* http://nomenugget.com/news/ipop-won%E2%80%99t-be-mining-season; *IPOP Submits Amended Permit Application*, THE NOME NUGGET, Feb. 19, 2021, *available at* http://www.nomenugget.com/news/ipop-submits-amended-permit-application; *Environmental Concerns Are Cited in Opposition to Mining Projects Like 'Rivers of Gold,'*  KNOM RADIO, Jun. 5, 2018, *available at* https://www.knom.org/wp/blog/2018/06/05/environmental-concerns-are-cited-in-opposition-to-rivers-of-gold/; *IPOP Mine in Limbo*, KNOM RADIO, Jun. 28, 2019, *available at* https://www.knom.org/wp/blog/2019/06/28/ipop-mine-in-limbo/; *IPOP Proposes Complex Gold Mining Project within Bonanza Channel Near Nome*, KNOM RADIO, Aug. 11, 2020, https://www.knom.org/wp/blog/2020/08/11/ipop-proposes-complex-gold-mining-project-within-bonanza-channel-near-nome/; *IPOP Submitted Another Gold Mining Permit Application to U.S. Army Corps*, KNOM RADIO, Feb. 8, 2021, *available at* https://www.knom.org/wp/blog/2021/02/08/ipop-submitted-another-gold-mining-permit-application-to-u-s-army-corps/; *Faced with Local Opposition, IPOP Continues Search for Gold Near Nome*, ALASKA PUBLIC MEDIA, Oct. 22, 2019, *available at* https://alaskapublic.org/2019/10/22/faced-with-local-opposition-ipop-continues-search-for-gold-near-nome/.

U.S.C. § 1404(a). The moving party seeking transfer under § 1404(a) bears the burden of establishing "good cause" for the transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (internal citations and quotations omitted). "When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim of transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of the parties and witnesses, in the interest of justice.'" *Id*. (quoting 28 U.S.C. § 1404(a)).

## ARGUMENT

This action exclusively involves a permitting application that Plaintiffs sought in Alaska to dredge a channel located in Alaska, and that has been the subject of substantial local interest in Alaska. Yet, despite this action's focus solely on Alaska, Plaintiffs elected to file this action over 3,000 miles away in the Western District of Louisiana, a district with only the most tenuous of ties to this litigation. Because both the "interests of justice" and the "convenience of the parties and witnesses" overwhelmingly favor the District of Alaska over the Western District of Louisiana, the Court should transfer this matter to the District of Alaska pursuant to § 1404(a).

When assessing whether transfer under § 1404(a) is appropriate, "[t]he Court must first determine whether the venue to which transfer is sought is one in which the case could have been filed." *Mascagni v. Schlumberger Tech. Corp.*, 2016 WL 11684374, at *1 (W.D. La.) (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam). Here, this action could have been brought in the District of Alaska because "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is subject to the action is situated" in Alaska. 28 U.S.C. § 1391(e)(1)(B). Indeed, Plaintiffs have *only* alleged that "events" and "omissions" occurred in Alaska; Plaintiffs do not allege a single "event" or "omission" that occurred in the Western District of Louisiana. *Id*.; *see* Compl. (ECF 1) ¶¶ 14-17,

4

29-209. Moreover, the "property that is the subject of this case" is the Bonanza Channel in Alaska. 28 U.S.C. § 1391(e)(1)(B); Compl. ¶¶ 15, 42, 96, 109, 133, 184, 197, 205. As such, venue in the District of Alaska is indisputably proper.

Once a court determines that venue would be appropriate in the alternate forum, the court then considers both public and private interest factors. *In re Volkswagen AG*, 371 F.3d at 203. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). "The private interest factors are: (1) the relative ease of access to proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. Here, all of these factors weigh in favor of transfer to the District of Alaska.

## I. The Public Interest Factors Favor Transfer to the District of Alaska

First, "the most important factor—the interest in having localized controversies decided at home"—strongly favors transfer to the District of Alaska. *Nat'l Wildlife Fed., Inc. v. U.S. Army Corps of Engineers*, 312 F. Supp. 3d 167, 169 (D.D.C. 2018) (internal citations omitted). This action concerns a hyper-local issue of a permitting decision in a sensitive area of both ecological and tribal importance near Nome, Alaska. The local community has been closely following the permitting application, with intense newspaper and radio coverage of both the permitting application itself and the filing of this litigation. *See* Factual Background, *supra*. Additionally, the local tribal communities have been following Plaintiffs' permit application carefully and

reporting on it in their own newsletters.[3]

In contrast, neither Plaintiffs' permitting application nor this litigation appears to be of substantial interest to the local community in the Western District of Louisiana. A search of the websites of local newspapers near Lafayette, Louisiana—the Daily Advertiser and the Advocate—for "IPOP" and "Bonanza Channel" did not return a single news article over the past four years regarding Plaintiffs' permit application or this litigation. *See* THE DAILY ADVERTISER, https://www.theadvertiser.com/; THE ADVOCATE, https://www.theadvocate.com/. And, indeed, it is unsurprising the local news in Louisiana has not been following the permitting application for a gold mine over 3,000 miles away in an area that has no ecological, historical, or community interest to the people of Louisiana like it has for the people of Alaska. Thus, the extraordinarily strong local interest in this matter in Alaska, particularly when compared to the virtually non-existent interest in Louisiana, strongly favors transfer of this matter to Alaska. *See, e.g.*, *Western Watersheds Project v. Pool*, 942 F. Supp. 2d 93, (D.D.C. 2013) ("The interests of justice are promoted when a localized controversy is resolved in the region it impacts.").

The remaining public interest factors also favor transfer to the district of Alaska. With respect to the first factor, "court congestion," judicial resources are substantially less burdened in the District of Alaska than the Western District of Louisiana. *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. According to the most recent Federal Court Management Statistics, the average judge in the Western District of Louisiana currently carries almost *three times* as many cases as

---

[3] *See e.g.*, *BSNC Opposes IPOP LLC Mining Project in Safety Sound*, BERING STRAITS NATIVE CORP., Sep. 11, 2020, *available at* https://beringstraits.com/bsnc-opposes-ipop-llc-mining-project-in-safety-sound/; *IPOP Mining Application Safety Sound/Bonanza Channel Comment Period until June 1*, KAWERAK, INC., May 24, 2021, https://kawerak.org/opposing-ipop-mining-permit-again/; *Tribe Objects to Mining in the Bonanza Channel*, VILLAGE OF SOLOMON TRIBAL MEMBERSHIP NEWSLETTER, SPRING/SUMMER 2020, at 14, *available at* https://static1.squarespace.com/static/5f222cda0370702b56ed65a9/t/5f507bbdb73f6026490af9b8/1599110105071/2020-SpringSummer.pdf.

the average judge in the District of Alaska. *See* Fed. Court Mngt Stats. (Mar. 31, 2022).[4] The Western District of Louisiana had 4,948 pending matters, with 707 pending matters per judgeship, as of March 31, 2022. *Id*. The District of Alaska, in contrast, had 753 *total* pending matters, with only 251 pending matters per judgeship. *Id*. This factor thus also favors transfer to Alaska.

The third and fourth public factors, "the familiarity of the forum with the law that will govern the case" and "the avoidance of unnecessary problems of conflict of laws or in the application of foreign law" also favor transfer to the District of Alaska. *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. Both this Court and the District of Alaska obviously are familiar with the Administrative Procedure Act and the various federal laws underlying the Corps' assessment of the permit application at issue in this action. But, Plaintiffs have alleged that the delay in this matter relates at least in part to interactions between the Corps and Alaskan tribal governments, including interactions related to the rights of tribal communities to subsistence hunting and fishing along the Bonanza Channel. *See, e.g.*, Compl. ¶¶ 74-75, *see also* ¶¶ 47, 98, 124. Consideration of any delay caused by these issues may require "familiarity" with the unique laws of Alaskan tribal governments, with which the District of Alaska is likely to be more experienced. *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. The District of Alaska's expertise in this matter could be particularly valuable because Alaska's native communities have very specific organizational structures, including regional and village native "corporations," which entail legal considerations that are unique to Alaska. *See, e.g.*, 43 U.S.C. §§ 1606, 1607. As such, all public factors favor transfer to the District of Alaska.

## II. The Private Interest Factors Favor Transfer to the District of Alaska

The private interest factors also favor transfer to the District of Alaska because virtually

---

[4] *Available at* https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2022/03/31-1

all sources of proof referenced in Plaintiffs' complaint are in Alaska, and no sources of proof appear to be in Louisiana. *See In re Volkswagen of Am., Inc.*, 545 F.3d at 315.

Based on the allegations of Plaintiffs' complaint, the primary evidence in this action will be the administrative file for Plaintiffs' permitting application in the Corps' field offices in Alaska. *See generally* Compl. On this basis alone, the first private interest factor, "the relative ease of access to proof" favors transfer to Alaska. *In re Volkswagen of Am., Inc.*, 545 F.3d at 315.

Moreover, Plaintiffs allege their permit has been delayed due to the coordination of multiple federal and state agencies in Alaska, as well as various Alaskan tribal communities and governments. *See* Compl. ¶¶ 28, 47, 54, 74-75, 98, 103, 118, 124, 171, 206. Plaintiffs allege that they initially submitted their application to the Alaska Department of Natural Resources under the state government's Application for Permits to Mine in Alaska ("APMA") process, which then transferred it to the Corps. *See id.* ¶ 16. As part of the Corps' required permit review process, the Corps must consult with relevant state and federal agencies, as well as interested tribal communities. 33 C.F.R. § 325.2(b); Dep't of Defense Instruction 4710.02.[5] As Plaintiffs allege, the Alaska Department of Natural Resources, the Alaska Department of Fish and Game, and the Alaska Department of Environmental Conservation have been involved in Plaintiffs' application. Compl. ¶¶ 16, 171, 206. Additionally, Plaintiffs allege the Corps consulted with the NMFS field office, which is in Juneau, Alaska, and the USFWS field office, which is in Fairbanks, Alaska. Compl. ¶¶ 29, 52, 77, 90, 96, 103, 110, 120-22, 128, 144, 146, 167, 186, 192, 197. And, Plaintiffs allege the Corps also has consulted with various Alaskan tribal communities and governments, as required by the Corps' policy on inter-governmental relations. Compl. ¶¶ 47, 54, 74-75, 98, 124; Dep't of Defense Instruction 4710.02. To the extent these entities have "proof" that must be

---

[5] *Available at* https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/471002p.pdf.

"access[ed]" in this action, they are all in Alaska. *In re Volkswagen of Am., Inc.*, 545 F.3d at 315.

In stark contrast, Plaintiffs' allegations do not suggest *any* relevant evidence exists in the Western District of Louisiana. Indeed, Plaintiffs' sole assertion that venue is appropriate in the Western District of Louisiana is their assertion that *two* of "many" investors live in Louisiana. Compl. ¶¶ 3-4, 209. But, Plaintiffs do not even allege the two Louisiana residents had any role in the permitting process. Instead, they merely assert that the two Louisiana residents—along with "many [other] investors"—invested in a California-based company, that that California-based company then contracted with a Nevada-based company, and that the *Nevada*-based company performed literally all of the permitting functions for Plaintiffs *in Alaska*. Compl. ¶¶ 3-7, 14-17, 39-209. As such, the first private interest factor, "the relative ease of access to proof," favors the District of Alaska over the Western District of Louisiana.

The remaining private interest factors—"(2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive"— are less relevant, but also favor transfer to Alaska. *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. APA cases such as the instant action typically are resolved through summary judgment briefing without witness testimony, *see Weber v. U.S. Dep't of State*, 885 F. Supp. 2d 46, 53 (D.D.C. 2012), and it is highly unlikely that witness testimony will be appropriate or necessary in this case. Should this case prove to be an exception, however, the witnesses referenced in Plaintiffs' complaint— personnel within Alaskan field offices of various federal agencies, personnel within Alaskan state government agencies, and tribal government and community members—are all in Alaska. Compl. ¶¶ 29, 47, 52, 54, 74-75, 77, 90, 96, 98, 103, 110, 120-22, 124, 128, 144, 146, 167, 186, 192, 197. As noted above, Plaintiffs' allegations do not suggest that either of the Louisiana

9

residents are likely to have any information relevant to the permitting process. Under Federal Rule of Civil Procedure 45, a court can only compel a witness's attendance "within 100 miles of where the person resides, is employed, or regularly transactions business in person," or, in certain circumstances, "within the state where the person resides, is employed, or regularly transacts business in person." Here, all possible witnesses appear to reside, be employed, and/or have transacted business in Alaska, thus giving the District of Alaska all relevant compulsory process, and precluding any compulsory process in this Court.[6] Moreover, the cost of transporting all witnesses from Alaska to Louisiana would be extraordinarily high, and all practical considerations appear to favor the District of Alaska. As such, all of the private interest factors favor transfer to the District of Alaska.

## CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that this action be transferred to the United States District Court for the District of Alaska.

Respectfully submitted,

| | |
|---|---|
| BRANDON B. BROWN | TODD KIM |
| UNITED STATES ATTORNEY | ASSISTANT ATTORNEY GENERAL |
| | Environment and Natural Resources Division |
| s/ Karen J. King | |
| KAREN KING (LA BAR #23508) | /s/ Kimere J. Kimball |
| Assistant U.S. Attorney | KIMERE J. KIMBALL (T.A.) |
| 800 Lafayette Street | USDOJ ENRD/EDS |
| Suite 2200 | P.O. Box 7611 |
| Lafayette, LA  70501-6832 | Washington, DC  20044-7611 |
| Telephone:  (337) 262-6313 | Telephone:  (202) 514-2285 |
| E-mail:  karen.king@usdoj.gov | E-mail:  Kimere.kimball@usdoj.gov |
| DATE:  July 25, 2022 | *Counsel for Defendant* |

---

[6] Even if the relevant IPOP employees do not have sufficient ties to Alaska to fall within the District of Alaska's compulsory process, Nevada is still over 1,000 miles from the Western District of Louisiana, and thus still well outside of the Western District of Louisiana's subpoena power.